WILLIAM D. WASHBURN, Appellant, *vs.* THE FOREST PRESERVE DISTRICT OF COOK COUNTY *et al.* Appellees.

*Opinion filed October 22, 1927—Rehearing denied Dec. 14, 1927.*

1. FORESTRY—*meaning of the word "forest."*   A forest is a tract of land covered with trees, or a woodland of considerable extent, with or without inclosed intervals of open and uncultivated ground.

2. SAME—*what tract of land is not subject to acquisition under Forest Preserve act.*   A tract of land of over two thousand acres which is largely marsh land and only one-thirtieth of which has trees upon it is not a forest and its acquisition as a natural forest is not authorized by the Forest Preserve act; nor can it be acquired under the amendment of 1921 as a tract connecting "forests or parts thereof," where it appears that it is not necessary to connect, and does not connect, existing forest preserves.

3. SAME—*what land may be acquired under the amendment of 1921.*   Under the amendment of 1921 to section 6 of the Forest Preserve act, giving commissioners power to acquire "land or lands connecting such forests or parts thereof," the commissioners may acquire only such land as is reasonably necessary to connect natural forests or forest preserves, and the amendment cannot be con-

strued to confer upon forest preserve districts power to acquire any land which the commissioners might regard as wise or proper.

4. MUNICIPAL CORPORATIONS—*the powers of a municipality are strictly construed.* The powers of a municipal corporation are not enlarged by liberal construction but are strictly construed, and any ambiguity arising out of a grant of power or a reasonable doubt concerning its existence is resolved against the municipality which claims to exercise the power.

APPEAL from the Superior Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding.

LORIN C. COLLINS, for appellant.

ADOLPH D. WEINER, GEORGE H. MASON, MICHAEL L. IGOE, EDWIN K. WALKER, and ROSS C. HALL, for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

On February 7, 1921, the board of forest preserve commissioners for the Forest Preserve District of Cook county passed an ordinance creating a forest preserve district in parts of sections 1, 2, 11, 12, 13 and 24, in township 42 north, range 12, and in parts of sections 18, 19 and 30, in township 42 north, range 13, east of the third principal meridian, in Cook county. The ordinance recited that to protect and preserve the flora and fauna and scenic beauty of certain land described in the ordinance, aggregating approximately 2090 acres, for the education, pleasure and recreation of the public, it was desirable and necessary that the forest preserve district should acquire the land in the manner provided by law. If the compensation to be paid could not be agreed upon, the attorney for the district was instructed to institute proceedings in its behalf, in any court of competent jurisdiction, to acquire the title to and the possession of the land in accordance with the law of eminent domain. Subsequently, on November 26, 1923,

William D. Washburn, for himself and his fellow-tax-payers, filed a bill of complaint in the superior court of Cook county against the forest preserve district and its commissioners to restrain the acquisition of the land by the district, and praying for a mandatory injunction directing the re-conveyance to the former owners of parcels of land already acquired, upon the return of the purchase money paid. The defendants demurred to the bill and the demurrer was sustained. The complainant elected to stand by his bill and it was dismissed for want of equity at his costs. He prosecuted an appeal to this court. Upon that appeal the decree was reversed and the cause was remanded to the superior court, with directions to overrule the demurrer and to proceed. (*Washburn* v. *Forest Preserve District,* 313 Ill. 130.) After the remandment of the cause the superior court overruled the demurrer to the bill. Thereafter, pursuant to leave granted, the complainant filed an amended bill, which later, also upon leave given, he withdrew without prejudice. The defendants excepted to certain portions of the original bill and the exceptions were sustained. On February 2, 1925, the board of forest preserve commissioners passed a supplemental ordinance amendatory of the ordinance of February 7, 1921. The supplemental ordinance recited that the land which the district sought to acquire contained one or more natural forests or parts thereof, and was necessary and desirable not only to preserve such forests but also to control the drainage conditions affecting other forest preserves owned and forested land to be acquired; to connect such forest preserves and forested land and to consolidate them into unit areas suitable and convenient for development with roadways and other appropriate improvements, in order to afford convenient access to them, increase their use by the public and facilitate their maintenance, policing and protection; and to protect and preserve the flora, fauna and scenic beauties within the district for the education, pleasure

327—31

and recreation of the public. After the passage of the supplemental ordinance the defendants filed their answer to the bill of complaint, admitting the passage of the original ordinance, averring the passage of the supplemental ordinance and denying the material allegations of the bill. The complainant filed exceptions to certain portions of the answer, and these exceptions were sustained. A replication to the answer was filed. A hearing followed, which resulted in a decree dismissing the bill for want of equity at the complainant's costs. From that decree this appeal is prosecuted.

The land which the board of forest preserve commissioners seeks to acquire pursuant to the ordinances of February 7, 1921, and February 2, 1925, is situated in the Skokie valley. This valley is approximately twenty miles long and has an average width in excess of a mile. The upper three-fourths of the valley is situate in Lake county, about a mile west of Lake Forest, Fort Sheridan and Highland Park, while the lower portion, which is in Cook county, is about the same distance west of the villages of Glencoe and Winnetka. The valley is about forty feet above the level of Lake Michigan, and there are ridges both to the east and to the west of it. Geological data show that the Skokie valley was once a large bay, the whole region being covered with water to a depth of about sixty feet.

A number of maps and aerial photographs of the Skokie valley were introduced in evidence. Twenty-seven witnesses testified—twelve for the appellant and fifteen for the appellees. Much of the testimony offered concerned the flora and fauna of the valley. On behalf of the appellant it was shown that there were practically no trees on the land proposed to be taken by the forest preserve district. Old residents of the vicinity testified that formerly the Skokie valley was a lake, with timber surrounding it, and that in recent years the valley had been often covered with water. A number of photographs taken in April, 1926, show the land submerged at different points.

The following is a plat of the tract of land which the forest preserve commissioners seek to acquire under the original and supplemental ordinances:

Evidence introduced on the part of the appellees tended to show that in a state of nature a large portion of the territory surrounding the present Skokie valley was actu-

ally covered with a dense forest; that the timber had been cleared away within recent years but some of the stumps were still standing; that ash, elm and oak trees grew on the islands; that the soil of the valley was adapted to the growth of trees and that the valley was available for re-forestation. Raphael Zon, director of the Lake States Forest Experiment Station, which is under the jurisdiction of the United States Department of Agriculture, testified that one hundred years ago the Skokie marsh and the surrounding territory constituted a solid natural forest.

Some of the appellees' witnesses testified that the Skokie valley was valuable in its present state for the study of the unusual flora and fauna there found and that it afforded excellent opportunities for physiographical and ecological studies. One witness referred to the valley as a natural out-of-door laboratory. Another witness testified that the commissioners of the forest preserve district desired to acquire the land because it constituted a swamp. There was considerable testimony to the effect that the marsh land afforded suitable drainage to forest preserves in the vicinity and that a disturbance of these conditions would result in the loss of trees and damage to the forested areas.

This tract, irregular in shape, varies in width from a quarter of a mile to a mile and a quarter and is nearly five miles long. It appears from the evidence that the tract is neither treeless nor generally wooded but consists principally of marsh or swamp land. Within this tract, besides an occasional tree and cluster of trees, there are five or six small areas, another area of about 10 acres and one of 30 or 35 acres, all with trees upon them. Estimates by the witnesses of the number of acres of wooded land in the tract of 2090 acres varied from 40 to 200. An inspection of the photographs and a consideration of the testimony leads to the conclusion that the wooded areas in the aggregate do not exceed 65 acres. One forest preserve, Turnbull Woods, consisting of 103 acres, is situated at the northeast

corner of the tract of 2090 acres.   Another forest preserve west of the Chicago and Northwestern railway is situated near the southwest corner of the tract but is not adjacent thereto.   Other non-contiguous forest preserves lie to the east, west and south.   Hence the tract does not connect, nor does it appear that the sole purpose of its contemplated acquisition is to connect, forests or parts of forests owned by the forest preserve district.

The question to be determined is not whether the tract of 2090 acres would prove valuable for one or more of the purposes stated by the appellees' witnesses nor whether the tract might be wisely or advantageously devoted to some conceivable present or future public use, but whether the forest preserve district is authorized to acquire the tract by the provisions of the act entitled, "An act to provide for the creation and management of forest preserve districts and repealing certain acts therein named." (Smith's Stat. 1925, p. 1393.)   By the first section of the act one of the conditions prescribed for the organization of a forest preserve district is that the territory so to be organized shall contain one or more natural forests or parts thereof.   The fifth and sixth sections read as follows:

"Sec. 5. Any forest preserve district organized under this act, shall have the power to create forest preserves, and for that purpose shall have the power to acquire in the manner hereinafter provided, and hold lands containing one or more natural forests or parts thereof or land or lands connecting such forests or parts thereof, for the purpose of protecting and preserving the flora, fauna and scenic beauties within such district, and to restore, re-stock, protect and preserve the natural forests and said lands together with their flora and fauna, as nearly as may be, in their natural state and condition, for the purpose of the education, pleasure and recreation of the public.

"Sec. 6. The board of commissioners of every such forest preserve district, shall have the power to acquire by

gift, grant, devise or purchase, or by condemnation, any and all grounds and lands within such district containing one or more natural forests or parts thereof or land or lands connecting such forests or parts thereof, for the purpose of creating, laying out and maintaining such forest preserves as it may deem proper or desirable. Such board of commissioners shall have the power to construct, lay out, improve and maintain, such convenient and appropriate drainage, wells, power plants, comfort stations, shelter houses, paths, driveways, roadways and other improvements in and through such forest preserves, as they shall deem desirable or necessary for the use of such forest preserves by the public."

Prior to July 1, 1921, neither of these sections contained the clause, "or land or lands connecting such forests or parts thereof." By an amendment effective on that day this clause was inserted in each of these sections. (Laws of 1921, p. 467.)

The act vests a forest preserve district with the power to acquire and hold land containing one or more natural forests or parts thereof, and land connecting such forests or parts of such forests. The power primarily conferred is to acquire land containing a natural forest. A forest is defined as being a tract of land covered with trees; a wood, usually one of considerable extent; a tract of woodland with or without inclosed intervals of open and uncultivated ground. (*People* v. *Long Island Railroad Co.* 110 N. Y. Supp. 512; 2 Words and Phrases,—2d series,—p. 610.) A forest is an extensive wood; a large tract of land covered with trees; sometimes, specifically, a considerable area of land covered with trees of natural growth. (Webster's New Int. Dict.) The Century Dictionary, after defining a forest as a tract of land covered with trees; a wood, usually of considerable extent; a tract of woodland with or without inclosed intervals of open and uncultivated ground,—discusses the words *forest, wood, woods, wood-*

*land* and *grove,* as follows: "Of some of these words the earlier and the later uses differ very much. *Forest* implies a large body of trees growing naturally, or the tract considered as covered with trees. It formerly always implied the presence of animals of the chase. *Wood* or *woods* is like *forest* except in being smaller. *Woodland* differs from *woods* in emphasizing the land or tract upon which the trees stand. A *grove* is a cluster of trees not sufficiently extensive to be called a *wood.*" Under these definitions it is manifest that the tract of 2090 acres, largely marsh land and only one-thirtieth of which has trees upon it, is not a forest, and that the acquisition of the tract as a natural forest is not authorized by the Forest Preserve act.

Prior to the amendment of 1921 the Forest Preserve act did not confer upon a forest preserve district the power to acquire land which connected forest preserves. To enable a district to exercise that power the amendment was enacted. Since the tract in question cannot be said to contain a natural forest within the meaning of the act, its acquisition must be justified, if at all, under the power to acquire land connecting natural forests or parts of such forests.

The powers of a municipal corporation are not enlarged by liberal construction but are strictly construed, and any ambiguity arising out of a grant of power or a reasonable doubt concerning its existence is resolved against the municipality which claims to exercise the power. (*Barnard & Miller* v. *City of Chicago,* 316 Ill. 519; *City of Rockford* v. *Nolan,* 316 id. 60; *Aberdeen-Franklin Coal Co.* v. *City of Chicago,* 315 id. 99; *Arms* v. *City of Chicago,* 314 id. 316.) The power to acquire "land or lands connecting such forests or parts thereof" is not a grant of power to acquire lands for any other purpose. The word "connecting" limits or qualifies the grant of power. If the General Assembly had intended to confer an ampler power it would have expressed that intention in the amendment of 1921.

The power to acquire land to connect natural forests is the power to acquire land reasonably necessary for that purpose. If the amendment of 1921 should be construed to confer upon forest preserve districts power to acquire any land which the commissioners might regard as wise or proper it would confer a power substantially without limit, because by a liberal and unwarranted construction any land within a forest preserve district may be said to be land connecting forest preserves. (*Washburn* v. *Forest Preserve District, supra.*) The tract of 2090 acres, it appears, is not necessary to connect, and does not connect, existing forest preserves, and its acquisition for the purpose of obtaining about one-thirtieth of its area in wooded land can not be sustained under the power to acquire land connecting forest preserves or parts thereof. Moreover, the act makes no provision for the creation of unit areas, as contemplated by the supplemental ordinance, and that power, apart from the power to connect forest preserves, cannot be implied.

The appellant asks that re-conveyances of such parcels of the tract in question as the forest preserve district may have acquired be ordered. His claim to such relief is not established and to that extent the prayer of his bill must be denied. Since, however, the forest preserve district lacks the power to acquire the tract of land in question by expending public funds in its purchase such expenditures should have been enjoined. Accordingly, the decree of the superior court is reversed and the cause is remanded to that court, with directions to enter a decree enjoining the appellees from further acquiring, by the application or expenditure of public moneys therefor, the land described in the ordinances of February 7, 1921, and February 2, 1925, except such parcels of that land as may be acquired by authority of and in conformity with section 6 of the Forest Preserve act as construed in this opinion.

*Reversed and remanded, with directions.*